IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Brenda Mulkey, | : | Case No. 1:04CV269 |
| | : | |
| Plaintiff, | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting Defendants' |
| Board of Education, | : | Motion for Summary Judgment |
| Rock Hill Local School District, et al., | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' motion for summary judgment (doc. 16), Plaintiff's memorandum in opposition thereto (doc. 18), Defendants' reply in support of their motion (doc. 19), Plaintiff's submission of supplemental authority in support of her opposition to Defendants' motion (doc. 20), Defendants' submission of supplemental authority in support of their motion (doc. 21), and Plaintiff's response to Defendant's submission of supplemental authority (doc. 22).  For the reasons that follow, the Court grants Defendants' motion for summary judgment.

I.      BACKGROUND

Plaintiff Brenda Mulkey filed this lawsuit, individually and in her capacity as mother and legal guardian of Charles Littlejohn, against the Rock Hill Local School District Board of Education (the "Board") and the school's superintendent, Lloyd Evans, in his official and individual capacities.  Mulkey made the following claims in her complaint: (1) violation of her and her son's First Amendment rights to free expression and privacy, (2) slander, (3) intentional

1

infliction of emotional distress, and (4) invasion of privacy. (Doc. 1.) Mulkey has dismissed the three state law claims (doc. 18 at 3) leaving only the First Amendment claims, brought pursuant to 42 U.S.C. § 1983, for the Court's consideration.

Mulkey's son Charles was diagnosed with Type I diabetes in January 2003. (Mulkey dep. 24.) Charles' first day of school at Rock Hill Elementary was approximately three weeks later. Mulkey's Complaint is founded on actions taken by Rock Hill Elementary School's nurse, Marsha Wagner, concerning Charles during his two-month period of enrollment at the school. Specifically, Mulkey complains that between February 4, 2003, and April 4, 2003, Nurse Wagner called her "every day telling [her] that [Charles'] sugar was high, that I needed to come and get him or he wasn't feeling well." (Mulkey dep. 54.) The record reflects that Nurse Wagner did not call Mulkey "every day" but rather called her on twelve days for the purposes of notifying Mulkey that Charles was sick or that he needed insulin and necessary medical supplies.[1] Mulkey claims that there were several occasions when Charles should not have been sent home. (Mulkey dep. 129.) However, upon reviewing Nurse Wagner's notes, Mulkey was unable to specify an incident where Nurse Wagner should not have called her. (*Id*. at 135.)

On March 18, 2003, one of the occasions on which Charles was sick and vomiting and needed to go home, Nurse Wagner attempted to call Mulkey but was unable to do so because

---

[1] Nurse Wagner's notes, attached to Mulkey's deposition transcript as Exhibit F, indicate that Wagner called Mulkey on twelve days between February 4 and April 4, 2003 either to report Charles' illness or to request medical supplies. *See also* Mulkey dep. 94-116. Mulkey came to school to get Charles on seven of those days: February 28, March 7, March 17, March 18, March 31, April 3, and April 4. *Id*. Charles was either vomiting or retching on four of those occasions (February 28, March 7, March 18, and April 4) and was complaining of low back pain and a burning sensation when urinating on March 31. *Id*. On March 17, Nurse Wagner called Mulkey because Charles' blood sugar was extremely high and he indicated that he had not taken his insulin the entire weekend, and on April 3 Charles complained to Nurse Wagner that he was dizzy. *Id*.

Mulkey's phone had been shut off. (Mulkey dep. Ex. F at 24; Mulkey dep. 107; Wagner dep. 100.) Nurse Wagner considered Charles' situation to be a medical emergency, and she called the Lawrence County Department of Job and Family Services (hereafter "Family Services") to report Mulkey for neglecting Charles' medical needs. (Wagner dep. 101.) Nurse Wagner testified that she made the report to Family Services in part because of Mulkey's failure to provide the school with Charles' medication and supplies. (*Id*. at 102.)[2] The Family Services intake officer who took Nurse Wagner's call made the following notes based on that call: "ACV [alleged child victim] is sick. He is diabetic and insulin dependent. Reporter tried to get a hold of mom and the phone was disconnected. ACV has threw up three times and is sick all the time. Reporter cannot get a hold of anyone in the family. Child did not get insulin for one to two days because he left shots at dad's house." (Martin dep. 25-26, Ex. 7.)

Family Services investigator Rich Blankenship responded to Nurse Wagner's call by visiting Mulkey at her home. (Mulkey dep. 117.) Blankenship told Mulkey that the school needed to be able to get in contact with her or a neighbor in the event Charles became ill at school. (*Id*. at 117-118.)[3] Family Services never filed a complaint against Mulkey, and Mulkey

---

[2] A few days before she placed the call to Family Services, Nurse Wagner had requested but not received from Mulkey supplies necessary to test Charles blood sugar. Nurse Wagner borrowed money from the school principal and went to the pharmacy to purchase the supplies herself. (Wagner dep. 102.)

[3] Notably, Mulkey did not have her phone turned back on at any time before she and Charles moved to another school district. (Mulkey dep. 120.) Neither did she provide the school with a neighbor's phone number so the school could reach her, testifying: "I didn't see any purpose of giving the neighbors' phone number out, you know, so that this school nurse could be calling and aggravating them to come and get a sick child that did not need to come home from school." (*Id*.) Mulkey's deposition testimony on the subject is illustrative of the situation Nurse Wagner faced: "Q. But if they [the school] needed to get you for a reason that you thought was important, wouldn't you want them to be able to get a hold of you? A. Yeah. Q. And how were they supposed to do that? A. They wasn't." (*Id*.)

incurred no expense as a result of Nurse Wagner's complaint. (*Id*. at 118.)  Nonetheless, Mulkey characterizes Nurse Wagner's call to Family Services as harassment, testifying that "it upset me pretty much for the simple fact of it is, you know, they had no right turning me in to Children Services regardless of whether I had a phone or not, you know.  I mean I can understand them, you know, trying to get a hold of me, you know, about my son but to take and turn me in to Children Services.  I mean get real."  (Mulkey dep. 124.)

Mulkey also alleges in her Complaint that Defendants "attempted to cause Plaintiff to remove the minor from the District."  (Doc. 1 at 3.)  In her deposition, Mulkey elaborated on this allegation explaining that Superintendent Evans suggested that Mulkey home school Charles until his health condition stabilized.  (Mulkey dep. 69, 79.)  Evans never demanded that Mulkey remove Charles from the school district, and Mulkey did not agree to home school Charles.  (*Id*. at 80.)  Charles stopped attending Rock Hill because Mulkey moved onto her father's property, which was located in a different school district.  (Mulkey dep. 51-52.)  Mulkey's move was motivated by financial reasons.  (*Id*.)

Rounding out her Complaint is Mulkey's objection to the fact that Nurse Wagner asked Charles to eat his breakfast and lunch in her office rather than in the school cafeteria.  (Mulkey dep. 65.)  Mulkey admitted, however, that she never told Nurse Wagner that she did not want Charles to have his meals in the nurse's office.  (*Id*. at 66.)  Mulkey alleges that she complained to Superintendent Evans that Nurse Wagner was calling her and telling her that Charles was sick when he really wasn't.  (*Id*. at 66.)  Mulkey alleges she believes Nurse Wagner called Family Services in retaliation for Mulkey's complaint to Superintendent Evans but admits that she has no information that causes her to have this belief.  (*Id*. at 73.)  Mulkey never contacted any Rock

Hill School District board member to discuss her objections to Nurse Wagner's conduct. (Mulkey dep. 135-36.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). On a motion for summary judgment, the movant has the burden of showing that no genuine issues of material fact are in dispute, and the evidence, together with all inferences that can permissibly be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986). The moving party may support the motion for summary judgment with affidavits or other proof or by exposing the lack of evidence on an issue for which the nonmoving party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). In responding to a summary judgment motion, the nonmoving party may not rest upon the pleadings but must go beyond the pleadings and "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). The nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The task of the Court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

## III. ANALYSIS

### A.  Failure to Exhaust Remedies Under the IDEA

The Court first addresses Defendants' contention that Mulkey's claim is essentially a "back door IDEA action" and that her claim fails because she did not exhaust her administrative

remedies under the IDEA. (Doc. 16 at 7.) The IDEA (Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*) provides that plaintiffs must exhaust their administrative remedies before bringing suit in federal court to obtain relief that is also available under the IDEA. *Doe v. Smith*, 879 F.2d 1340, 1343-44 (6th Cir. 1989). However, exhaustion is not required if it would be futile or inadequate to protect the plaintiff's rights. *Covington v. Knox County School Sch. Sys.*, 205 F.3d 912 (6th Cir. 2000). In *Covington*, the Sixth Circuit Court of Appeals held that exhaustion was not required when the injured child had already graduated from the school, his injuries were wholly in the past, and money damages were the only remedy that could make him whole. *Id*. at 917 (reasoning that "'the condition creating the damage has ceased,' and there is no equitable relief that would make [the former student] whole." (quoting *Plasencia v. California*, 29 F. Supp. 2d 1145, 1152 (C.D. Cal. 1998)).

Charles is no longer enrolled as a student at Rock Hill. Therefore, the Court finds the reasoning of *Covington* applicable and holds that exhaustion of administrative remedies under the IDEA would be futile in this case. Because exhaustion would be futile, the court need not address whether Mulkey's complaint actually falls within the ambit of the IDEA or whether Mulkey appropriately exhausted any remedies therein.

### B. 42 U.S.C. § 1983 and Municipal Liability

Mulkey asserts two separate claims under 42 U.S.C. § 1983: retaliation for her exercise of her First Amendment rights, and violation of her and her son's First Amendment right to privacy.[4] Defendants urge the Court to dismiss Mulkey's retaliation claim on grounds that

---

[4] The precise nature of Mulkey's § 1983 claim is impossible to discern from the Complaint itself. Mulkey captions her first claim, "42 U.S.C. § 1983: First Amendment Privacy Violation." However, Paragraph 20 states that the claim "is brought pursuant to 42 U.S.C. § 1983 to vindicate rights guaranteed Plaintiff and her minor son under the First Amendment to the

Mulkey and her son never engaged in any constitutionally protected activity, namely, that the subject of Mulkey's "speech" was not of public concern and thus not within the protection of the First Amendment. Defendants also urge the Court to dismiss Mulkey's privacy claim on grounds that she has not identified any privacy right that was violated by the Defendants. Additionally, Defendants argue that the Board cannot be held liable in a § 1983 action under a theory of municipal liability because Mulkey cannot establish that the alleged deprivation of Mulkey's and her son's constitutional rights was caused by an official policy or custom of the school district. (Doc. 19 at 11.)

Mulkey's memorandum in opposition to Defendants' motion does nothing to elucidate the basis of her § 1983 claim. Remarkably, rather than discuss the facts of Mulkey's case or cite case law pertinent thereto, Plaintiff's counsel refers the Court to a Memorandum in Opposition to Summary Judgment filed *in a different lawsuit* filed against the same Defendants, *Jenkins v. Board of Education, Rock Hill Local School District*, S.D. Ohio, Case No. 1:04cv180. While *Jenkins* had certain elements in common with the instant matter (both cases were brought by mothers of diabetic children enrolled in the Rock Hill elementary school, both allege that a school employee called Family Services to report suspected child neglect, and both allege that Defendants attempted to remove the child from the school district), the facts and the application of the law thereto are not so similar that the memorandum in opposition filed in one case can

---

Constitution of the United States and the penumbra of familial rights recognized by the Supreme Court of the Unites [sic] States; through the Fourteenth Amendment to the Constitution of the United States; and the laws of the United States guaranteeing equal access to public education by persons with disabilities." To confuse the issue further, the following paragraph states, "Defendant's actions, in retaliating under color of law against Plaintiff because of her complaints, and in harassing Plaintiff and the minor throughout his enrollment, violated Plaintiff's and the minor's First Amendment rights to free expression and privacy."

7

suffice as a response to a motion for summary judgment in the other. The Court is astonished by the lack of effort put forth by Plaintiff's counsel in responding to Defendants' motion, particularly in light of the vagueness of Mulkey's Complaint and the obvious damage Mulkey's own deposition testimony did to her First Amendment claims.

For the reasons explained below, the Court finds that Mulkey has failed to meet the threshold inquiry of demonstrating that she has asserted the deprivation of a clearly established constitutional right.[5]

### 1. Retaliation for Exercising the First Amendment Right to Free Speech

The three elements of a retaliation claim are: (1) that the plaintiff was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights. *Mattox v. City of Forest Park*, 183 F.3d 515, 520 (6th Cir. 1999) (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)). To be considered constitutionally protected, speech must touch upon a matter of public concern. *Connick v. Myers*, 461 U.S. 138 (1983).

Mulkey asserts that the free expression she was punished for was "the way [her son] was treated." (Mulkey dep. 83-84.) Elaborating, Mulkey testified in her deposition that her First Amendment claim was based on the following: "To me, he [Charles] wasn't getting an education he needed.... My son was being treated as though he was an AIDS patient, not a diabetic patient,

---

[5] Borrowing from the technique demonstrated by Plaintiff's counsel, the Court refers counsel to its Order Granting Summary Judgment in *Jenkins v. Board of Education, Rock Hill Local School District*, S.D. Ohio, Case No. 1:04cv180, for its discussion on §1983 and municipal liability.

you know. And, you know, that was wrong. I mean, you know, he should have been able to go out in the cafeteria and eat with the other kids.... [H]e should have been at school getting an education and learning instead of being sent home." (Mulkey dep. 84-85.) The only complaints Mulkey ever made to Superintendent Evans or Nurse Wagner concerned Wagner's response to and treatment of Charles, not any other child. (*Id.* at 86.) Thus, her complaints did not amount to matters of public concern. *See*, *e.g.*, *Landstrom v. Illinois Dept. of Children and Family Servs.*, 892 F.2d 670 (7th Cir. 1990) (holding that parents' speech involving personal complaints about the school's treatment of their daughter could not support a First Amendment claim).

The Court cannot construe Mulkey's First Amendment retaliation claim as anything but ludicrous.[6] Not only did Mulkey never engage in any protected speech, she presents no evidence whatsoever to support a finding that Nurse Wagner called Family Services for any reason other than that she was concerned about Charles' health and welfare. Accordingly, the Court grants Defendants' motion for summary judgment on Mulkey's First Amendment retaliation claim.

### 2. Right to Privacy

Although Mulkey in her Complaint claims that "Defendants' actions, in retaliating under color of law against Plaintiff because of her complaints, and in harassing Plaintiff and the minor throughout his enrollment, violated Plaintiff's and the minor's First Amendment rights to free expression and privacy," Mulkey's memorandum in opposition to Defendants' motion does not even mention a right to privacy claim. Defendants construe this omission as an indication that Mulkey abandoned her right to privacy claim. (Doc. 19 at 1.) Whether Mulkey has, in fact,

---

[6] Furthermore, the Court agrees with Defendant that "plaintiff's citation to Title VII and workplace discrimination case law [has] no relevance to judging the merits of her First Amendment claim." (Doc. 19 at 2.)

voluntarily abandoned the claim is of no import, as there is no construction of law or fact that could support such a claim in this case.

Simply put, the record cannot sustain a finding that the Defendants violated Mulkey or her son's right to privacy.[7] The Supreme Court has recognized the right of citizens to control the dissemination of sensitive information about one's self. *Whalen v. Roe*, 429 U.S. 589, 599-600(1977). The Sixth Circuit has narrowly construed *Whalen* to "extend the right to informational privacy only to interests that implicate a fundamental liberty interest." *Bloch v. Ribar*, 156 F.3d 673, 684 (6th Cir.1998). In assessing these claims, courts must apply a two-part test: "(1) the interest at stake must implicate either a fundamental right or one implicit in the concept of ordered liberty; and (2) the government's interest in disseminating the information must be balanced against the individual's interest in keeping the information private." *Flaskamp v. Dearborn Pub. Sch.,* 385 F.3d 935, 945 (6th Cir. 2004).

Mulkey's claim cannot satisfy either prong of this analysis. First, Mulkey cites absolutely no authority for the proposition that a parent has a fundamental liberty interest in information pertaining to her management of her child's diabetes. Second, there is no evidence whatsoever that Defendants revealed any of Charles' private medical information to anyone. Because Mulkey has not asserted the deprivation of any constitutional right, the Court need not inquire into whether Superintendent Evans' actions were objectively unreasonable or whether the School Board is responsible for the alleged violation.

---

[7] The "right of privacy" is founded in the *Fourteenth* Amendment's concept of personal liberty. *Roe v. Wade*, 410 U.S. 113, 152 (1973); *see also Flaskamp,* 385 F.3d at 944-45. Mulkey does not explain why she asserts her right to privacy claim under the First Amendment.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (doc. 16).

IT IS SO ORDERED.

                __s/Susan J. Dlott_____
                Susan J. Dlott
                United States District Judge